UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEANDER BALDWIN, JR.,

    Petitioner,

v.                                    CASE NO. 8:24-cv-903-JLB-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Before the Court is the *pro se* 28 U.S.C. § 2254 petition for habeas corpus relief filed by Leander Baldwin, Jr. (Petitioner). Petitioner is a prisoner of the Florida Department of Corrections serving an 18-year sentence followed by 18 years on probation for burglary with a battery. (Doc. 1). At the Court's direction (Doc. 3), Respondent filed a response (Doc. 8), and Petitioner filed a reply. (Doc. 12). Petitioner subsequently filed an amended reply. (Doc. 19).

Upon careful consideration of the pleadings, the state court record, and the entire file, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.[1]

---

[1] Because the Court was able to resolve the petition on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## I. Background and Procedural History

In the early morning hours on February 2, 2018, Baldwin broke into an 85-year-old's home and beat him with a metal bar. (Doc. 9-1 at 660–61). A jury convicted Petitioner of burglary with a battery. (Doc. 9-1 at 648). The trial court sentenced Petitioner to 18 years in prison, followed by 18 years of probation. (Doc. 9-1 at 653). Florida's Second District Court of Appeal (Second DCA) affirmed the conviction and sentence without a written opinion. (Doc. 9-1 at 704).

Thereafter, Petitioner filed a motion, and subsequently, an amended motion, for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (collectively, Rule 3.850 Motion). (Doc. 9-1 at 706–22, at 731–64). Petitioner moved to voluntarily dismiss both motions (Doc. 9-1 at 766–68), which the postconviction court granted. (Doc. 9-1 at 770–71). He then filed a Motion to Correct an Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800 (Doc. 9-1 Ex. 15), which the postconviction court denied. (Doc. 9-1 at 786–876). The Second DCA affirmed without a written opinion. (Doc. 9-1 at 878–919).

Next, Petitioner filed a Florida state petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. (Doc. 9-1 at 926–50). The Second DCA denied the petition without a written opinion. (Doc. 9-1 at 952). Finally, Petitioner filed another Rule 3.850 motion. (Doc. 9-1 at 954–69). Following a response by the State (Doc. 9-1 at 1010–1107), the postconviction court denied the motion. (Doc. 9-1 at 1109–78). The Second DCA affirmed without a

written opinion.  (Doc. 9-1, at 1199).

Petitioner provided the instant *pro se* petition for habeas corpus relief to prison officials on April 11, 2024.  (Doc. 1).[2]

## II. Governing Legal Principles

### A. The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  In this context, "clearly established federal law" consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  *White v. Woodall*, 572 U.S. 415, 420 (2014); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when

---

[2] Generally, the date of a prisoner's filing is the date the *pro se* prisoner delivers his document to the prison official for mailing.  *Houston v. Lack*, 487 U.S. 266, 275 (1988).

faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A decision involves an unreasonable application of clearly established law if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 406).

The section 2254(d) standard is both mandatory and difficult to meet. To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 420 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, warranting deference. *Ferguson v.*

*Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance. *Sellers*, 138 S. Ct. at 1196.

## B. Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687–88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* A showing on only one prong will not support an ineffective assistance claim. *Id.* at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.").

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Id.* at 688. In reviewing counsel's

- 5 -

performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Proving *Strickland* prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

## III. Discussion

In Ground One, the sole claim presented, Petitioner contends that counsel was ineffective for failing to investigate and present an insanity defense. (Doc. 1 at 20–25). Under Florida law, insanity, an affirmative defense, is shown when:

> (a) The defendant had a mental infirmity, disease or defect; and
> (b) Because of this condition, the defendant:
> 1. Did not know what he or she was doing or its consequences; or
> 2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.
> Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.

Fla. Stat. § 775.027(1). A defendant presenting this affirmative defense bears the burden of proving insanity by clear and convincing evidence. *Id.* § 775.027(2).

Petitioner asserts that counsel knew he had mental health issues. He also

contends that: (1) he told counsel he remembered nothing about what happened during the burglary, nor why he did it; (2) counsel should have investigated and identified Petitioner's "associates" who could have supported an insanity defense; and (3) counsel should have used information in the police reports to request that the court appoint an expert to examine Petitioner and determine if he were insane at the time of the burglary. (*Id.*).

When raised in Petitioner's second Rule 3.850 Motion, the postconviction court summarily rejected this claim as follows:

> On August 4, 2022, the Court noted locations in the record indicating that counsel was aware of Defendant's mental health issues and *did* conduct an investigation into them. However, in an abundance of caution, the Court directed the State to respond.
>
> The State responded with its position that Defendant's motion should be summarily denied because the record refutes his allegations. First, the State points to a pre-trial hearing where it notified the Court of jail calls where Defendant discussed the night of the crime and he stated that he was on drugs and does not remember what happened. (*Exhibit A: Sept. 12, 2018, Hr'g Tr. at pp. 4–5*.) At another pre-trial hearing, Defendant discussed drugs being involved in his crime by stating, "and about the drugs too" while complaining about his attorney's representation. (*Ex. B: May 15, 2018, Hr'g Tr. at p. 9*.) The State agrees with Defendant that he likely did "consistently inform his counsel that he did not remember what happened or why he did what he did." However, the State argues, and the Court agrees, that voluntary intoxication is not a defense to any crime, and that "[e]vidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense ...." § 775.051, Fla. Stat. The State concludes that Defendant's argument that counsel was deficient for failing to investigate an insanity defense and that he was prejudiced is disingenuous and disputed by the record. The Court agrees with the

State that the record reflects that drugs, and not insanity, are the reason Defendant does not remember what happened the night of the crime.

Additionally, the State agrees with the Court that the record reflects that counsel was aware of and called attention to possible mental health issues related to the crime, and that counsel did investigate an insanity defense. The record reflects that Defendant was adamant on multiple occasions that he did not want to waive his right to a speedy trial—despite counsel expressing the need and desire to further prepare by conducting an investigation and gathering additional information. (*See Ex. C: April 13, 2018 Hr'g Tr. at pp. 3, 7-10; Ex. B: May 15, 2018 Hr'g Tr. at pp. 3–4, 8, 17–21, 24; Ex. D: May 22, 2018 Hr'g Tr. at pp. 4–5, 7–8, 12–13; Ex. E: May 30, 2018 Hr'g Tr. at pp. 8, 12–17, 20–21*.) Counsel ultimately waived speedy over Defendant's objection for the purpose of conducting depositions and investigating Defendant's potential mental [health] issues. (*Ex. E: May 30, 2018 Hr'g Tr. at pp. 14–16, 20–21*.) Because of this, counsel was able to conduct more than fifteen depositions. (*Ex. F. July 9, 2018 Pre-trial Hr'g and Nelson Hr'g Tr. at p. 6*.)

The State also points to additional locations in the record showing that counsel expressed concerns about Defendant's mental health multiple times and took steps to investigate it. (*Ex. A: Sept. 12, 2018 Hr'g Tr. at pp. 4–5, 26–27; Ex. C: April 13, 2018 Hr'g Tr. at p. 6; Ex. B: May 15, 2018 Hr'g Tr. at p. 11; Ex. E: May 30, 2018 Hr'g Tr. at pp. 9, 11*.) Counsel even spoke with Defendant's mother about Defendant's mental health, and expressed that Defendant "does have some pretty lengthy history." (*Ex. B: May 15, 2018 Hr'g Tr. at p. 11*.) At the second pre-trial conference, counsel requested that Dr. Poorman evaluate Defendant for competency, and she expressed the need to gather medical records. (*Ex. B: May 15, 2018 Hr'g Tr. at pp. 11, 16*.) The next day, counsel filed a "Motion for Examination to Determine Competency to Proceed Mental Illness" and asserted that Defendant was lacking in all six criteria. (*Ex. G: May 16, 2018, Motion for Examination to Determine Competency to Proceed Mental Illness*.) Although Dr. Poorman acknowledged Defendant's history of mental health issues, she opined that Defendant was competent to proceed as to all six criteria. (*Ex. E: May 30, 2018 Hr'g Tr. at p. 12*.) Thus, the State argues, and the Court agrees, that although insanity and competency are not equivalents, the record demonstrates that counsel

> did in fact conduct a reasonable investigation into potential mental health issues in pursuit of mental health defenses or competency issues. For all of these reasons, the Court finds that counsel was not deficient, and Defendant did not suffer prejudice.
>
> As to Defendant's claim that, had counsel conducted a reasonable investigation, she could have discovered the identities of his "associates at the time of the events" who would have assisted in developing a viable insanity defense, the State argues the claim should fail because it is conclusory. When claiming counsel was ineffective for failing to call witnesses to testify at trial, a defendant must provide 1) the identity of each prospective witness, 2) the substance of the witness' testimony, 3) an explanation about how the omission of the testimony prejudiced the outcome of the trial, and 4) an assertion that the witnesses were available to testify. *Barthel v. State*, 882 So. 2d 1054, 1054–55 (Fla. 2d DCA 2004) (citing *Nelson v. State*, 875 So. 2d 579, 582–83 (Fla. 2004)). Additionally, the defendant must allege that he advised counsel of such witnesses. *Prieto v. State*, 708 So. 2d 647, 649 (Fla. 2d DCA 1998). To establish prejudice, the defendant must show, based on the circumstances of the case, "that there is a likelihood that the deficient conduct affected the outcome of the court proceedings." *Nelson*, 875 So. 2d at 583 (quoting *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983)).
>
> Defendant's allegations are conclusory and insufficient to prove that counsel was deficient and that he was prejudiced. The Court agrees with the State that Defendant's allegations are wishes that counsel had gone on a "fishing expedition" to find unnamed and unknown "associates." He does not even explain how these "associates" could have assisted with an insanity defense, and it is unclear how Defendant could know that these unknown "associates" could be helpful for this purpose, given his adamant allegations that he does not even remember the events of that evening. Vague and conclusory allegations are insufficient to warrant relief. *See Griffin v. State*, 866 So. 2d 1, 9 (Fla. 2003) (vague and conclusory allegations are insufficient to meet a defendant's burden of establishing a prima facie case based on a legally valid claim).

(Doc. 9-1 at 1111–13) (emphasis in original). The Second DCA affirmed without a written opinion. (Doc. 9-1 at 1199).

- 9 -

Petitioner has not shown that the state postconviction court unreasonably denied his claim. First, Petitioner failed to show that counsel was ineffective for failing to investigate Petitioner's "associates" to help establish an insanity defense. As the state court noted, Petitioner failed to identify his "associates" and explain how they would have assisted in establishing an insanity defense. To show prejudice resulting from a missing witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008). *See also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (holding that failure to interview witnesses could not constitute ineffective assistance without a showing that the investigation would have helped the defendant). Petitioner named no witnesses who allegedly would have offered helpful testimony, much less detail their specific testimony in affidavits. Thus, Petitioner failed to show that he was prejudiced by counsel's failure to investigate his "associates" to help establish an insanity defense.

Next, to establish prejudice on his claim that counsel was ineffective in failing to pursue an insanity defense, Petitioner was required to "show a reasonable probability that a jury would have found by clear and convincing evidence that he met the insanity standard at the time of the charged offense []." *Hayes v. Sec'y, Fla. Dep't of Corr.,* 10 F.4th 1203, 1211 (11th Cir. 2021). "Under Florida law, clear and convincing evidence is 'evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief, without hesitation, about the matter in issue.'" *Id*. at 1211–12 (quoting Fla. Std. Jury Instr. (Crim.) 3.6(a)).

Petitioner failed to make the required showing. Petitioner asserted that he had mental health issues at the time of the offense. But he neither specified what those issues were nor produced any medical records or other evidence to support them. Moreover, he neglected to show that he had any mental health issues that rendered him legally insane at the time of the offense. A mental disease or defect alone is not enough to establish an insanity defense in Florida. Such a condition must affect the defendant's cognition in the manner specified in Fla. Stat. § 775.027(1). *See Perez v. State*, 306 So. 3d 126, 130 n.1 (Fla. 2d DCA 2018) ("[M]ental illness that does not result in insanity, as defined by section 775.027, Florida Statutes (2013), is not a defense." (citing *Chestnut v. State*, 538 So. 2d 820 (Fla. 1989))). Petitioner presented no evidence that he had a mental illness, and, even if he did, he did not submit evidence as to how any mental illness rendered him unable to distinguish right from wrong, or to know what he was doing and its

consequences.

Petitioner next asserts that his inability to recall the incident and his bizarre behavior immediately before and after the incident are evidence of his insanity at the time of the incident. But the state postconviction court found that Petitioner was unable to recall the incident because he was *intoxicated and* under the influence of drugs at that time. The finding that Petitioner was under the influence of drugs at the time of the offense is supported by the record. (*See* Doc. 9-1 at 1117–18, 1131).

And Florida law does not recognize insanity caused by voluntary intoxication. *See Gray v. State*, 731 So. 2d 816, 818 (Fla. 5th DCA 1999) (noting that Florida does not recognize a defense of insanity brought on by the voluntary use of drugs near the time of the offense). Petitioner's use of drugs on the day of the offense would have significantly undercut his argument that his inability to recall the offense and bizarre behavior proved he was legally insane when he committed the offense.

Finally, Petitioner has never presented an expert opinion stating that he was legally insane at the time of the offense. Although expert testimony is not required to create a jury issue regarding insanity in Florida, such testimony would have been highly beneficial in helping the Petitioner establish an insanity defense. *See Hayes*, 10 F.4th at 1212 ("In Florida, competent lay testimony . . . can create a jury issue as to insanity." (citing *State v. Clark*, 745 So.2d 1116, 1117 (Fla. 4th DCA 1999); *State v. Van Horn*, 528 So.2d 529, 530 (Fla. 2d DCA 1988); *Powell v. State*,

373 So.2d 73, 74 (Fla. 1st DCA 1979))); *Johnson v. Wainwright*, 806 F.2d 1479, 1486 (11th Cir. 1986) (noting that "*Boykins* [*v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984)] implicitly acknowledges that insanity is a complex question in which an expert's testimony is helpful to the jury."). *See also Hayes*, 10 F.4th at 1213 (federal habeas petitioner's claim that trial counsel rendered ineffective assistance by withdrawing insanity defense was "weake[ned]" by the absence of an "expert evaluation or opinion on the issue of sanity.").

At bottom, Petitioner's trial counsel indeed investigated Petitioner's mental health while preparing for trial. Indeed, there is record evidence showing that Petitioner has some history of mental health issues, and that he exhibited some bizarre behavior immediately before, during, and after the burglary with a battery. But that could have also been attributed to his voluntary intoxication. Either way, Petitioner's allegation that his trial counsel failed to investigate any mental health issues is belied by the record. Even more, Petitioner failed to present any evidence that would have shown he met Florida's criteria for insanity because mental illness, by itself, does not equate to an insanity defense under Florida law. *See Perez*, 306 So. 3d at 130 n.1 ("[M]ental illness that does not result in insanity, as

defined by section 775.027, Florida Statutes (2013), is not a defense.").[3]

Regardless, Petitioner failed to establish a reasonable probability that the jury would have found by clear and convincing evidence that he was insane when he committed the offense. Consequently, the postconviction court did not unreasonably deny the claim. *Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995) ("In light of Kight's denial of complicity in the crime and his failure to come forward with evidence supporting a claim of insanity, we cannot say that his counsel was ineffective for failing to pursue an insanity defense.") (citing *Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir. 1992)). Petitioner is not entitled to relief on Ground One.

## IV. Conclusion

Based on the foregoing, Petitioner is not entitled to habeas relief.

Accordingly, it is **ORDERED** that:

1. The 28 U.S.C. § 2254 petition (Doc. 1) filed by Leander Baldwin, Jr. is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Respondent and

---

[3] Indeed, it is instructive that Dr. Poorman found Petitioner competent to stand trial. Although competency to stand trial is different from the evidence necessary to establish an insanity defense, Petitioner's trial counsel engaged Dr. Poorman to examine Petitioner's mental health, indicating that Petitioner was not deficient in the first instance. The record demonstrates that counsel conducted a reasonable investigation into potential mental health issues in pursuit of mental health defenses or competency issues. (*See* Doc. 9-1 at 1111–13).

against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

## Certificate of Appealability[4]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented [are] adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on December 16, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[4] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."